# United States District Court
# Central District of California

| | |
|---|---|
| PATRICIA FILARDI, an individual,<br><br>Plaintiff,<br><br>v.<br><br>STARBUCKS # 8709, a business of unknown form; BR INDIO, LLC, a California Limited Liability Company; and DOES 1–10 inclusive,<br><br>Defendants. | Case No. 5:18-CV-00404-ODW-SP<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT [25]** |

## I.   INTRODUCTION

Plaintiff Patricia Filardi, brings this action against Defendants, Starbucks # 8709 ("Starbucks") and BR Indio, LLC ("Indio") (collectively, the "Defendants"), seeking damages and injunctive relief for violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et. seq.*, and the Unruh Civil Rights Act, Cal. Civ. Code Sections 51–53. (*See generally* Compl., ECF No. 1.) Defendants failed to respond, and the Clerk entered default. (ECF Nos. 16, 20) Filardi now applies for default judgment against Defendants. (Mem. of P. & A. Supp. Mot. Default J. ("Mem."), Attach. 1, ECF No. 25.) Filardi seeks injunctive relief, statutory damages in the amount of $8,000.00, and $4,796.00 in attorney fees and costs. (Compl. 9, Appl. for Default J. ("Appl.") 2,

ECF No. 25.) For the reasons discussed below, the Court **GRANTS** the Motion[1].

## II. FACTUAL BACKGROUND

Filardi is a quadriplegic who uses a wheelchair and a specially-equipped van with a ramp to travel. (Comp. ¶ 1.) Defendant Indio, owns the real property located at 81952 Hwy 111 #A, Indio, CA 92201 ("the Property") and Defendant Starbucks owns and operates the business of Starbucks No. 8709 ("the Business") on the Property. (*Id.* ¶¶ 3–6.)

On or about December 28, 2017, and February 10, 2018, Filardi attempted to patronize the Business located on the Property. (*Id.* ¶ 11.) The parking spaces on the Property were not in compliance with the Americans with Disability Act Accessibility Guidelines ("ADAAG") because there were no handicapped accessible parking spaces near the shortest accessible route to the entrance of the Business. (*Id.* ¶¶ 14–15.) Filardi asserts that there were no policies ensuring that the parking spaces were compliant for persons with disabilities. (*Id.* ¶ 18.) Additionally, though Filardi indicates that she would like to return to the Business, she is deterred from doing so because there were not sufficient parking spaces. (*Id.* ¶¶ 22–23.)

On March 18, 2018, Filardi filed a proof of service indicating that she served Starbucks, and that its responsive pleading was due on April 9, 2018. (ECF No. 12.) On March 22, 2018, Filardi filed a proof of service indicating that she served Indio, and that its responsive pleading was due on April 12, 2018. (ECF No. 13.) After Defendants failed to respond to the Complaint, the Clerk entered default for Indio on April 17, 2018, and for Starbucks on April 20, 2018. (ECF Nos. 16, 20.) Filardi applied for default judgment on May 23, 2018. (ECF No. 22.) However, the Court denied her first application for failure to comply with the procedural requirements set forth in the Local Rules. (*See* ECF Nos. 23–24.) Now, Filardi applies, for a second time, for default judgment. (ECF No. 25.) For the reasons below, the Court **GRANTS** her request.

---

[1] After considering Plaintiff's brief, the Court deems the matter appropriate for decision without oral argument and **VACATES** the hearing on this motion. Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15.

2

### III. LEGAL STANDARD

Federal Rule of Civil Procedure 55(b) authorizes a district court to grant a default judgment after the Clerk enters default under Rule 55(a). Fed. R. Civ. P. 55(b). Before a court can enter a default judgment against a defendant, the plaintiff must satisfy the procedural requirements set forth in Federal Rules of Civil Procedure 54(c) and 55, as well as Local Rule 55-1 and 55-2. Fed. R. Civ. P. 54(c), 55; C.D. Cal. L.R. 55-1, 55-2. Local Rule 55-1 requires that the movant submit a declaration establishing: (1) when and against which party default was entered; (2) identification of the pleading to which default was entered; (3) whether the defaulting party is a minor, incompetent person, or active service member; (4) that the Servicemembers Civil Relief Act, 50 U.S.C. § 3931, does not apply; and that (5) the defaulting party was properly served with notice, if required under Rule 55(b)(2). C.D. Cal. L.R. 55-1. Finally, if the plaintiff seeks unliquidated damages, Local Rule 55-2 requires the plaintiff to give notice to the defaulting party of the amount sought. C.D. Cal. L.R. 55-2; *Unliquidated Damages*, Black's Law Dictionary (10th ed. 2014) (defining "unliquidated damages" as "[d]amages that cannot be determined by a fixed formula").

If these procedural requirements are satisfied, a district court has discretion to enter default judgment. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). In exercising discretion, a court must consider several factors (the "*Eitel* Factors"): (1) the possibility of prejudice to plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake; (5) the possibility of a dispute concerning material facts; (6) whether the defendant's default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986). Upon default, the defendant's liability generally is conclusively established, and the well-pleaded factual allegations in the complaint are accepted as true. *Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–19 (9th Cir. 1987) (per curiam) (citing *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977)).

# IV. DISCUSSION

## A. Procedural Requirements

Filardi has complied with the relevant procedural requirements for the entry of a default judgment: (1) the Clerk entered a default against Defendants; (2) the default was entered on the original Complaint that Filardi filed on February 27, 2018; (3) Defendants are not infants or incompetent persons; (4) Defendants are not covered under the Servicemembers Civil Relief Act; and (5) Filardi served Defendants with notice of this Motion by first class United States Mail on June 18, 2018. (Decl. of Joseph R. Manning Jr. ("Manning Decl.") ¶¶ 2, 3, 5, Ex. 3, ECF No. 25–3.) Thus, the Court evaluates the *Eitel* factors.

## B. The *Eitel* Factors

The *Eitel* factors weigh in favor of entering a default judgment. The Court will discuss each factor in turn.

### 1. <u>Filardi Would Suffer Prejudice</u>

The first *Eitel* factor asks whether the plaintiff will suffer prejudice if a default judgment is not entered. *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). Here, Defendants have failed to appear in this action and continue to violate the relevant provisions of the ADA and the Unruh Civil Rights Act; thus, Filardi will be left without recourse unless the Court enters default judgment. (Mem. 7, ¶¶ 21-22.) *See Vogel v. Rite Aid Corp.*, 992 F. Supp. 2d 998, 1007 (C.D. Cal. 2014) (finding that Plaintiff would be prejudiced if default judgment was not granted against Defendants who failed to comply with the ADA and Unruh Civil Rights Act). Therefore, this factor favors entry of default judgment.

### 2. <u>Filardi Has Brought Meritorious Claims</u>

The second factor "require[s] that a plaintiff state a claim which [it] may recover." *PepsiCo*, 238 F. Supp. 2d. at 1175 (citations omitted); *Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 499 (C.D. Cal. 2003). Filardi asserts claims for violations of the ADA and the Unruh Civil Rights Act. (*See generally*

Compl.)

In her Memorandum of Points and Authorities, Filardi discusses the Property's lack of handicapped accessible parking spaces located on the shortest accessible route to the entrance of the Business, as a violation of Section 208.3.1[2] of the 2010 ADA Standards for Accessible Design ("Section 208.3.1"). (Mem. 1, ¶ 23.) The 2010 ADA Standards for Accessible Design, however, are only applicable to facilities which are either newly constructed or have had alterations on or after September 15, 2010. 28 C.F.R. § 36.406(a). Filardi failed to allege that the Property was either built or reconstructed on, or after, September 15, 2010. (*See generally* Mem., Compl.) As a result, the Court declines to evaluate the requirements set forth by the 2010 ADA Standards for Accessible Design. Furthermore, any injunctive relief granted will not require Defendants to comply with the 2010 ADA Standards for Accessible Design.

### i. Filardi's ADA Claim

Under the ADA, "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). A finding of discrimination under the ADA often entails "more subtle forms of discrimination . . . that interfere with disabled individuals' 'full and equal enjoyment' of places of public accommodation." *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 945 (9th Cir. 2011) (citing 42 U.S.C. § 12182(a)). In order "[t]o prevail on a Title III discrimination claim, the plaintiff must show that (1) [plaintiff] is disabled within the meaning of the ADA; (2) the defendant is a private

---

[2] Section 208.3.1 provides: "Parking spaces complying with 502 that serve a particular building or facility shall be located on the shortest accessible route from parking to an entrance complying with 206.4. Where parking serves more than one accessible entrance, parking spaces complying with 502 shall be dispersed and located on the shortest accessible route to the accessible entrances. In parking facilities that do not serve a particular building or facility, parking spaces complying with 502 shall be located on the shortest accessible route to an accessible pedestrian entrance of the parking facility." *Available at,* https://www.access-board.gov/guidelines-and-standards/buildings-and-sites/about-the-ada-standards/ada-standards/chapter-2-scoping-requirements ("ADA Standards").

entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations by defendant because of [plaintiff's] disability." *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir. 2007) (citing 42 U.S.C. §§ 12182(a)–(b)).

First, Filardi is a quadriplegic who uses a wheelchair for mobility. (Compl. ¶ 1.) Filardi is a disabled person within the meaning of the ADA because the ADA applies to any individual who possesses "a physical or mental impairment that substantially limits one or more major life activities of such individual." 42 U.S.C. § 12102(1)(A).

Second, the Business sold food and drinks on the Property during the relevant time period. (Compl. ¶ 6.) Under the ADA, "a restaurant, bar, or other establishment serving food or drink" qualifies as a public accommodation. 42 U.S.C. § 12181 (7)(A). Therefore, the Business is a place of public accommodation and subject to Title III of the ADA. (Mem. 4, ¶¶ 22–24.)

A public accommodation must maintain, in operable working conditions, facilities that are readily accessible for persons with disabilities. 28 C.F.R. § 36.211(a). Filardi alleges that she personally encountered the architectural barriers and "[the] inaccessible conditions denied [her] full and equal access." (Compl. ¶ 20.) Here, Defendants failed to ensure that the facilities were accessible by Filardi because their handicapped parking did not comply with Section 208.3.1.

According to Section 208.3.1, "[p]arking spaces complying with 502 that serve a particular building or facility shall be located on the shortest accessible route from parking to an entrance." ADAAG § 208.3.1.[3] While there were parking spaces close to the Business's entrance, there were no *handicapped* parking spaces that complied with Section 208.3.1, by providing the shortest accessible route to the entrance. (*Id.* ¶¶ 21–23.) The only designated handicapped accessible parking was around the corner and behind the building, which is not on the shortest accessible route to an entrance. (*Id.* ¶¶ 24–25.) Therefore, Defendant's violation of the ADAAG creates an architectural

---

[3] *See* ADA Standards.

barrier on the Property. *See generally Vogel*, 992 F. Supp. 2d at 1009–10.

Existing facilities are discriminatory when there is "a failure to remove architectural barriers . . . where such removal is readily achievable." 42 U.S.C. § 12182(b)(2)(A)(iv). The existence of a barrier can be determined by referencing the 1991 ADAAG. *See Chapman*, 631 F.3d at 945 (using the ADAAG to determine whether defendants' facility was "readily accessible" such that it was not a barrier to plaintiff). Some district courts have adopted the Tenth Circuit's burden shifting framework, in evaluating the burden of proof as it relates to whether removal of an architectural barrier is readily achievable. (*Id.*) *E.g., Molski v. Foley Estates Vineyard & Winery, LLC*, 531 F.3d 1043, 1049 (9th Cir. 2008) ("We find that the language of § 4.1.7, the access to information, and the congressional intent behind the ADA support placing the burden of production on the defendant.").

Under the Tenth Circuit framework, the "[p]laintiff bears the initial burden of production to present evidence that a suggested method of barrier removal is readily achievable." *Colorado Cross Disability v. Hermanson Family, Ltd.*, 264 F.3d 999, 1006 (10th Cir. 2001). Upon a successful showing, the burden shifts to defendant[s] who "[bear] the ultimate burden of persuasion regarding [their] affirmative defense that a suggested method of barrier removal is not readily achievable." (*Id.*) Filardi argues that whether removal of the barrier is "readily achievable" is an affirmative defense that is waived unless raised by the defendant. (Appl. 9–10 (citing *Wilson v. Haria & Gogri Corp.*, 479 F. Supp. 2d 1127, 1133 n. 7 (E.D. Cal. 2007)).

Even under the Tenth Circuit's burden shifting framework, Filardi has met her initial burden. By alleging in the Complaint that the type of barriers at the Business have been identified by the Department of Justice as presumably readily achievable to remove, Filardi satisfied her burden. (Compl. ¶ 25.) Moreover, because Defendants failed to respond to Filardi's Complaint, they waived any affirmative defense that removal of the barrier is not readily achievable. *See Vogel*, 992 F. Supp. 2d at 1011 (defendant "failed to meet his burden because he failed to appear and defend."). As a

result, Filardi's ADA claim is meritorious because Defendants denied Filardi public accommodations based on her disability.

      ii.  Filardi's Unruh Civil Rights Act Claim

The Unruh Civil Rights Act states that a "violation of the right of any individual under the federal Americans with Disabilities Act of 1990 . . . shall also constitute a violation of this section." Cal. Civ. Code § 51(f). Furthermore, "[w]hoever denies, aids, or incites a denial, or makes any discrimination or distinction contrary to section 51, 51.5, or 51.6, is liable for . . . [no] less than four thousand dollars ($4,000), and any attorneys' fees that may be determined by the court in addition thereto." Cal. Civ. Code § 52(a).

Filardi seeks one penalty for her personal encounters at the Business on December 28, 2017, and on February 10, 2018, and one penalty for deterrence. (*Id.*) Filardi has provided the Court with a sworn declaration stating that she went to the Business on December 28, 2017, and February 10, 2018, and personally encountered the violation that caused her difficulty, humiliation, frustration and upset. (*Id.* at 4, ¶ 20.) Additionally, Filardi asserts that she would like to patronize the Business but is deterred[4] from returning due to her knowledge of the barriers. (*Id.* at 5, ¶¶ 22–23, 26.) Filardi relies on *Johnson v. Guerdoir*, 218 F. Supp. 3d 1096, 1102 (E.D. Cal. 2016), where the court ruled that a plaintiff can be awarded statutory damages for one

---

[4]California Civil Code § 55.56 defines deterrence, as follows:
 (d) A plaintiff demonstrates that he or she was deterred from accessing a place of public accommodation on a particular occasion only if both of the following apply:
  (1) The plaintiff had actual knowledge of a violation or violations that prevented or reasonably dissuaded the plaintiff from accessing a place of public accommodation that the plaintiff intended to use on a particular occasion.
  (2) The violation or violations would have actually denied the plaintiff full and equal access if the plaintiff had accessed the place of public accommodation on that particular occasion.
Cal. Civ. Code § 55.56.

encounter and a separate award for deterrence.

However, unlike in *Johnson*, where the plaintiff provided sworn statements about his experience trying to access the store on multiple occassions, here, Filardi does not demonstrate that she attempted to patronize the Business again but was "prevented or reasonably dissuaded." (*See generally* Compl.;) Cal. Civ. Code § 55.56. While Filardi claims that she is being deterred from patronizing the business, her statement is conclusory because she does not provide any corroborating evidence demonstrating that she was prevented or reasonably dissuaded from the Business on a *particular occasion*. (Compl. ¶¶ 22, 26.) The Unruh Civil Rights Act provides that a plaintiff subjected to discrimination is entitled to recover $4,000 for each occasion on which he was denied equal access Cal. Civ. Code § 52(a); *see also Doran v. Embassy Suites Hotel*, No. C-02-1961 EDL, 2002 WL 1968166, at *4 (N.D. Cal. Aug. 26, 2002) (finding that although California courts have not addressed where section 52(a) or 54.3(a) support daily damages, they have addressed similar language in analogous statutory schemes and have interpreted the calculation of damages based on specific instances of violations); *see also Kohler v. Rednap, Inc.,* 794 F. Supp. 2d 1091, 1094 (C.D. Cal. 2011) ("[S]tatutory damages are not available on a daily basis from the date a plaintiff first encounters a barrier until that barrier is remedied; rather, a plaintiff must be denied full and equal access "on a particular" occasion before he can recover statutory damages."). Therefore, Filardi is only entitled to damages based on her personal encounters because she did not satisfactorily describe a specific instance or particular occasion where she was deterred.

As previously established, Defendants have violated the ADA; as a result, Defendants also violated the Unruh Civil Rights Act and are therefore liable to pay Filardi $4,000, plus attorneys' fees. Thus, Filardi's Unruh Civil Rights Act claim is meritorious.

    3. <u>Filardi's Complaint Was Sufficiently Plead</u>

Filardi's complaint pleads declaratory relief on the grounds that Defendants

violated the ADA and the Unruh Civil Rights Act. (*See generally* Compl.) As explained in greater detail above, the Complaint and the allegations within were sufficiently pleaded and form the basis for claims on which Filardi may recover. Thus, this factor weighs in favor of granting default judgment.

### 4. The Amount at Stake Weighs in Favor of Default Judgment

The fourth *Eitel* factor balances "the amount of money at stake in relation to the seriousness of Defendant[s'] conduct." *PepsiCo*, 238 F. Supp. 2d at 1176. Here, the total amount Filardi seeks to recover is $12,796.00, including statutory costs and attorneys' fees, which Defendants are liable to pay under Unruh Civil Rights Act. Cal. Civ. Code §§ 51–53. Given that the entire sum requested is statutorily permitted, and of relatively low value, this factor weighs in favor of granting default judgment.

### 5. There is No Possibility of Dispute as to Material Facts

The next *Eitel* factor considers the possibility that material facts are in dispute. *Eitel*, 782 F.2d at 1471–72. Because the allegations in Filardi's Complaint are presumed true, Defendants' failure to oppose the Application results in a finding that "no factual disputes exist that would preclude entry of default judgment." *Vogel*, 992 F. Supp. 2d at 1013. Furthermore, there is little concern that the amount awarded will be disputed because the sum is statutorily authorized. Thus, the Court finds this factor favors entry of default judgment.

### 6. There is Little Possibility Default was Due to Excusable Neglect

The next factor considers whether a defendant's default may have resulted from excusable neglect. *Eitel*, 782 F.2d at 1471–72. The possibility of excusable neglect here is remote. Filardi not only served the Complaint via personal service on Defendants, but also mailed a copy of its Application for Default Judgment by first class mail to Defendants. (ECF Nos. 12–13; Manning Decl. ¶ 3.) Accordingly, this factor weighs in favor of entering default judgment.

///

///

7. <u>Policy for Deciding on the Merits Weighs in Favor of Granting Default Judgment</u>

In *Eitel*, the court maintained that "[c]ases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. However, where, as is the case here, the defendant fails to answer the plaintiff's complaint, "a decision on the merits [is] impractical, if not impossible." *PepsiCo*, 238 F. Supp. 2d at 1177 ("Under Fed. R. Civ. P. 55(a), termination of a case before hearing the merits is allowed whenever a defendant fails to defend an action."). Furthermore, "when a defendant . . . [knows] that he has been sued . . . [it is] the defendant who seeks to prevent an adjudication on the merits." *Carol Gilbert, Inc. v. Haller*, 179 Cal. App. 4th 852, 865 (2009). Accordingly, the Court finds that this factor does not preclude default judgment.

## C. **Attorneys' Fees and Costs**

Filardi contends that the Court should not follow Local Rule 55's Schedule of Attorneys' Fees when determining the appropriate amount to award. (Mem. 9–10.) The Supreme Court has held that rules of proportionality are inappropriate in cases where the plaintiff asserts civil rights claims. *City of Riverside v. Rivera*, 477 U.S. 561, 578 (1986). Rather, it is more appropriate in these circumstances to "compensate lawyers for all time reasonably expended on a case." (*Id.*)

Here, Filardi's attorney, Joseph R. Manning Jr., who has been practicing for fifteen years, seeks $4,796.00 in fees and costs. (Manning Decl. ¶ 4.) Manning maintains that he worked, at a rate of $425.00 per hour, for 9.9 hours and incurred $589.00 in filing fees and service costs. (*Id.*)

The Court finds that Manning's rate of $425.00 per hour is reasonable. *See Langer v. S. W. Med. Care Inc.*, No. 5:17-cv-00959-ODW-DTB, 2018 WL 456131, at *4 (C.D. Cal. Jan. 17, 2018) (finding that $425 was a reasonable hourly rate for similar attorneys in the Central District with extensive experience in ADA litigation). However, the Court finds that the amount of time Manning expended on this case is

unreasonable.  Manning's billing statement provides a detailed time record that describes the work performed.  (Ex. 5, ECF No. 25.)  The Court takes issue with the amount of time that was spent on drafting the Complaint, the notice of motion, motion for application for entry of default judgment, and the declaration in support of the motion along with compiling the exhibits and instructing his staff what to file.

Considering Manning's substantial experience, the Court finds that one hour drafting the Complaint and three hours of attorney time on the motion for default judgment is excessive.  Manning has represented Filardi in seventeen cases with identical legal issues and similar factual issues; additionally, he has been the attorney in over 600 cases, the vast majority of which being ADA claims, in the Central District of California alone.  Filardi's Complaint is almost identical to complaints from previous cases that Manning has filed.  An example of this can be seen when he referred to Filardi as a "he" instead of "she," further establishing that the amount of time he claims to have spent is excessive. (Compl. ¶¶ 16, 22.)  Therefore, preparing these documents should not have taken Manning four hours to draft.

For the reasons discussed above, the Court reduces the number of hours of drafting the Complaint from 1 hour to 30 minutes, and preparing the Motion from 3 hours to 1.5 hours.  As such, the Court finds that Filardi's request for $4,796.00 in attorneys' fees and cost is unreasonable and reduces the award to $3,946.

## V. CONCLUSION

For the reasons discussed above, the Court **GRANTS** Filardi's Motion for Default Judgment.  (ECF No. 25.)  The Court awards Filardi $4,000 in statutory damages, and $3,946 in attorneys' fees and costs.

July 3, 2018

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**